TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut
Neil Berger

*Attorneys for Albert Togut,*
*Not Individually But Solely in His Capacity as*
 *the Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| HELLO NEWMAN, INC., | : | Case No. 16-12910 (SCC) |
|  | : |  |
| Debtor. | : |  |
|  | : |  |

------------------------------------------------------------------ x

|  |  |  |
|---|---|---|
| ALBERT TOGUT, Not Individually But Solely in His Capacity as Chapter 11 Trustee, | : | |
|  | : |  |
| Plaintiff, | : | Adv. Pro. No. 17-_____ (SCC) |
|  | : |  |
| v. | : |  |
|  | : |  |
| DORIS KORNISH and NEW VIBE YOGA, INC. a/k/a VILLAGE ASHTANGA d/b/a/ VILLAGE YOGA FRIENDS, | : | |
|  | : |  |
| Defendants. | : |  |

------------------------------------------------------------------ x

## **COMPLAINT**

Albert Togut, not individually but solely in his capacity as Chapter 11 trustee ("Plaintiff" or the "Trustee") of the estate of Hello Newman, Inc., the debtor in the above-captioned case, (the "Debtor"), by and through his attorneys, Togut, Segal & Segal LLP, hereby makes this complaint (the "Complaint") against Doris Kornish and New Vibe Yoga, Inc. a/k/a Village Ashtanga d/b/a/ Village Yoga Friends ("Village Yoga," together with Doris Kornish, the "Defendants") for an order directing Doris

Kornish to provide the Trustee and his authorized representatives with immediate access to the Debtor's building pursuant to section 521 of title 11 of the United States Code (the "Bankruptcy Code") and directing the Defendants to turnover and delivery of possession of the Debtor's property to the Trustee pursuant to Bankruptcy Code section 542, and alleges upon information and belief:

## SUMMARY OF THE ACTION

1. The Debtor is the sole-owner of the real property located at 113 East 2nd Street, New York, New York 10009 (the "Real Property"). The Real Property consists of approximately 8,500 square feet, which the Debtor values as approximately $14 million.

2. Prior to the Petition Date (defined below) and until their divorce in August 2008, the Real Property was the residence of Doris Kornish, Phillip Hartman, and their children.

3. The 2008 Judgment of Divorce entered by the Supreme Court of the State of New York (the "New York State Court") concerning Ms. Kornish and Mr. Hartman directed that the Real Property be placed on the market for sale in or around April 2012.

4. Since that time, Mr. Hartman vacated the Real Property. The children no longer reside in the Real Property.

5. As of the date hereof, Ms. Kornish continues to reside in and possess the Real Property, but without any lease or agreement with the Debtor. Ms. Kornish does not compensate the Debtor for her use and occupancy.

6. Secured claims against the Real Property, including a judgment of foreclosure and mortgages, go unpaid with default interest that accrues daily.

7.      Additionally, prior to the Petition Date, Ms. Kornish, in her individual capacity and without authorization from the Debtor, entered into an agreement with Village Yoga to use a certain portion of the Real Property as a yoga studio.  Ms. Kornish collected and treated use and occupancy payments made by Village Yoga as her personal income until this Court directed that all such use and occupancy payments be made instead to the Trustee.

8.      In any event, the amount of the monthly payments by Village Yoga are insufficient to satisfy the monthly expenses of the Real Property, including interest that accrues monthly on account of the mortgages and liens that encumber the Real Property.

9.      On April 19, 2017, pursuant to Bankruptcy Rule 9001(5), the Court entered an order:  (i) designating Ms. Kornish as the person responsible for performing the duties of the Debtor;  (ii) directing Ms. Kornish to turn over to the Trustee all property of the Debtor's estate pursuant to section 521(a)(4);  (iii) directing Ms. Kornish to instruct Village Yoga to make payments for use and occupancy of the Real Property directly to the Trustee;  and (iv) directing Ms. Kornish to otherwise cooperate with the Trustee.

10.      Ms. Kornish was about to let insurance of the property lapse.  On or around May 19, 2017, the Trustee arranged for property and liability insurance on the Real Property to be bound and renewed prior to its expiration on May 20, 2017.  The existence of a previously undisclosed New York City building violation, with an outstanding penalty balance of $4,030, limited the pool of insurers who were willing to provide coverage on the Real Property.

11.      Notwithstanding the Trustee's efforts, Ms. Kornish has refused to comply with Trustee's demand that she provide immediate access to the insurer of the

3

Real Property to conduct a required inspection to avoid any lapse in insurance coverage. Ms. Kornish's refusal to provide access to the Real Property jeopardizes the insurance obtained by the Trustee.

12. Plaintiff therefore seeks entry of an order directing Ms. Kornish to comply with her duty pursuant to Bankruptcy Code section 521 and the Court's Order requiring her to cooperate with the Trustee, and provide immediate access to the Trustee, and/or any party authorized by the Trustee, to the Real Property to allow the insurer of the Real Property to conduct its inspection, or for any other purpose needed by the Trustee.

13. Plaintiff also seeks turnover of possession of the Real Property pursuant to Bankruptcy Code section 542 because the Real Property constitutes the only apparent property of the Debtor's estate that the Trustee can sell to satisfy claims asserted against the estate, and Ms. Kornish and Village Yoga are improperly exercising possession of the Real Property and impeding the Trustee's ability to administer the Real Property.

14. Plaintiff also seeks a judgment finding the unauthorized agreement between Ms. Kornish, in her individual capacity, and Yoga Village for the use of Apartment 1 of the Real Property to be unenforceable because: the Debtor is not a party to the agreement; and Ms. Kornish did not have any apparent authority to enter into such agreement on behalf of the Debtor.

## THE COMMENCEMENT OF THE DEBTOR'S CHAPTER 11 CASE

15. On October 17, 2016 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition") for relief under Chapter 11 of the Bankruptcy Code in this Court (the "Court") [Dkt. No. 1].

4

16.     On December 22, 2016, the Debtor filed its Statement of Financial Affairs [Dkt. No. 16].  Ms. Kornish signed the Statement of Financial Affairs as President of the Debtor.

17.     On February 22, 2017, Doris Kornish filed a statement asserting she is the "President, and CEO of the Debtor" [Dkt. No. 28].

18.     No committee of unsecured creditors has been appointed in this case.

19.     On February 23, 2017, the Court entered an *Order Directing the United States Trustee for the Southern District of New York* (the "United States Trustee") to *Appoint a Chapter 11 Trustee* [Dkt. No. 29].

20.     On March 1, 2017, the United States Trustee filed his *Notice of Appointment of Trustee* [Dkt. No. 32] designating Albert Togut as the Chapter 11 trustee of the Debtor.

21.     On March 2, 2017, the Court entered an *Order Approving the Appointment of Chapter 11 Trustee* [Dkt. No. 33], pursuant to which Albert Togut was appointed as Chapter 11 trustee herein.  The Trustee has duly qualified and is acting as trustee of the Debtor.

## THE PARTIES

### Plaintiff

22.     Plaintiff is the duly appointed and qualified Chapter 11 Trustee of the Debtor.

### Defendants

23.     Upon information and belief, Doris Kornish is an officer, and a fifty-percent shareholder of the Debtor.  Ms. Kornish resides in the Real Property.

24.     Upon information and belief, Village Yoga is a New York

5

corporation using and conducting business at Apartment 1 of the Real Property.

## JURISDICTION AND VENUE

25.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  This action is commenced pursuant to Bankruptcy Code sections 521, 541 and 542, and Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

26.     This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (M), and (O).  This court has jurisdiction to hear and determine this proceeding, and to enter a final order and judgment granting the relief sought herein.

27.     Venue of this adversary proceeding is proper pursuant to 28 U.S.C. § 1409 because this adversary proceeding arises in, and is related to, the Debtor's bankruptcy case pending in this district.

## FACTUAL ALLEGATIONS

A.     **The Debtor**

28.     In or around October 1996, the Debtor was formed as a New York corporation.

29.     Ms. Kornish and Mr. Hartman are each fifty-percent shareholders of the Debtor.

30.     Ms. Kornish, who is appearing *pro se*, has asserted that she is the President and CEO of the Debtor.

31.     On January 5, 2016, the Court entered its *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Dkt. No. 18] (the "Bar Date Order") establishing (a) February 28, 2017 as the last day for the filing of

6

non-governmental unit claims, and (b) April 15, 2017 as the last day for the filing of claims by governmental units.

32.     Neither Ms. Kornish nor Mr. Hartman filed claims before the expiration of the non-governmental unit claims bar date.

33.     On or about April 3, 2017, the Court entered an *Order (I) Establishing A Special Bar Date for the Debtor's Equity Holders to (A) File Proofs of Claim and (B) Disclose Indirect Claims and Known Third-Party Claims; and (II) Approving Form and Manner of the Notice Thereof* [Dkt. No. 54] (the "Special Claims Bar Date Order") establishing, among other things, May 18, 2017 as the last date by which: (i) Ms. Kornish and Mr. Hartman could file proofs of claim against the Debtor, and (ii) Ms. Kornish and Mr. Hartman could allege, assert or raise claims in any way related to the Debtor's property.

34.     Pursuant to the Special Claims Bar Date Order, on May 18, 2017, Mr. Hartman filed his proof of claim [Claim No. 11], asserting a claim against the Debtor in the amount of $547,090 for legal fees, mortgage payments, insurance payments, and court costs, which he asserts he paid on behalf of the Debtor. Additionally, Mr. Hartman asserted claims against Ms. Kornish for his share of income generated by the Real Property in the amount of $432,000, and for rental payments for her use and occupancy of the Real Property over the last nine years in the amount of $1,620,000.

35.     Ms. Kornish did not file a claim pursuant to the Special Claims Bar Date Order and thus has no cognizable claims in this Chapter 11 case. Such claims, if any, are now time-barred.

36.     As reflected in the claims register, proofs of claim asserted against the Debtor in the total amount of $5,033,033 are as follows:

7

| Creditor | Claim No. | Classification | Amount |
|---|---|---|---|
| Consolidated Edison Company of New York | 1 | Unsecured | $6,282.81 |
| Department of Treasury - IRS | 2 | Priority | $500.00 |
| NYCTL 1998-2 Trust (Unpaid Real Property Taxes) | 3 | Secured | $146,131.19 |
| NYC Department of Finance | 4 | Priority | $12,484.74 |
| Knuckleknee LLC (Mortgage) | 5 | Secured | $2,379,906.00 |
| LCP Jerry LLC (Foreclosure Judgment) | 6 | Secured | $1,845,893.67 |
| New York State Department of Taxation & Finance | 7 | Priority | $4,791.58 |
| | | Unsecured | $515.50 |
| 1020 Park Avenue | 8 | Unsecured | $29,812.50 |
| Jeffrey Randall Karp, Esq. (Unpaid Legal Fees) | 9 | Unsecured | $29,812.50 |
| Jeffrey Randall Karp, Esq. | 10 | Unsecured | $29,812.50 |
| Mr. Phillip Hartman | 11 | Unsecured | $542,090 |
| | | Priority | $5,000 |

**B.    The Real Property**

37.    On or about October 28, 1998, the Debtor purchased and obtained title to the Property.

38.    The Real Property constitutes property of the Debtor's estate pursuant to Bankruptcy Code section 541.

39.    As property of the Debtor's estate, the Trustee may use, sell or lease the Real Property pursuant to Bankruptcy Code section 363.

40.    In its Schedules, the Debtor assigns a value of $14 million to the Real Property.

8

41.     In its Schedules, the Debtor asserts the Real Property is encumbered by mortgages and liens, which secure claims totaling $4,693,323.76.

42.     The Real Property is the sole-asset of this estate that can be administered to pay the expenses and claims against the Debtor's estate.

43.     On or around August 11, 2016, prior to the Petition Date, the New York City Department of Buildings found the Real Property to be in violation of Local Law 28.302.4 (the "NYC Building Dept. Violation") for the failure to submit a required "report of critical examination" as to the condition of the Real Property's façade.

44.     On account of the NYC Building Dept. Violation, a penalty of $4,030 was assessed against the Real Property prior to the Petition Date, and that amount remains outstanding.

45.     The income generated by the Real Property is insufficient to pay the monthly expenses of the Real Property and amounts payable monthly to the creditors who assert liens against the Real Property.

46.     Mr. Hartman and Ms. Kornish have advised the Court and the Trustee that they have attempted to refinance the Real Property, but neither of them have provided any evidence of any such refinancing.

**C.     The LCP Jerry Mortgage and Foreclosure Judgment**

47.     On or about August 4, 2005, the Debtor executed a Mortgage, Consolidation, Modification, and Extension Agreement (the "Consolidated Mortgage") in favor of HSBC, Bank USA National Association ("HSBC") in the amount of $1,878,346.91.

48.     Ms. Kornish and Mr. Hartman executed personal guarantees of the Consolidated Mortgage.

9

49.    On or about December 31, 2014, HSBC assigned its interest in the Consolidated Mortgage to LCP Jerry LLC (the "LCP Jerry Mortgage").

50.    Beginning in or around August 2014, the Debtor defaulted under the terms of the mortgage note associated with the LCP Jerry Mortgage for failing to make monthly payments.

51.    On or about March 6, 2015, LCP Jerry LLC commenced a foreclosure action in the New York State Court against, among other entities, the Debtor, Mr. Hartman, and Ms. Kornish.

52.    On or about August 22, 2016, LCP Jerry LLC obtained a judgment of foreclosure and sale in the New York State Court in the amount of $1,749,443.12, plus interest (the "Foreclosure Judgment," a copy of which is attached hereto as Exhibit A).

53.    The Debtor filed the Petition to stay the foreclosure sale of the Real Property scheduled by LCP Jerry LLC for October 19, 2016.

54.    On or about February 15, 2017, LCP Jerry LLC filed its proof of claim [Claim No. 6] against the Debtor asserting a claim of $1,845,893.67 for amounts due under the LCP Jerry Mortgage.

**D.    The Knuckleknee Mortgage**

55.    On or about April 8, 2013, the Debtor executed a Mortgage, Assignment of Leases and Rents, and Security Agreement in favor of Knuckleknee, LLC in the amount of $1,500,000 (the "Knuckleknee Mortgage").

56.    Ms. Kornish and Ms. Kornish executed personal guarantees of the Knuckleknee Mortgage.

57.    On or about February 13, 2017, Knuckleknee LLC filed its proof of claim [Claim No. 5] against the Debtor asserting a claim of $2,371,906 for amounts due under the Knuckleknee Mortgage.

58.     Debt service on the Knuckleknee Mortgage has not been paid since December 2014, and as of the date hereof, the Debtor remains in default.

59.     Interest on the Knuckleknee Mortgage accrues at the default rate of 24%, equal to $1,000 per day.

**E.     Other Liens Against the Real Property**

60.     Upon information and belief, in or around March and June of 2002, the Debtor executed five mortgages in favor of the United States Small Business Administration ("SBA") totaling $906,900 in exchange for loans made to businesses affiliated with Mr. Hartman.

61.     In its Schedules, the Debtor scheduled a secured claim in favor of SBA in the amount of $544,892.32.

62.     NYCTL 2061-A Trust, successor in interest to the City of New York, asserts a lien against the Real Property on account of unpaid real estate taxes in the amount of $146,131.19.

63.     On January 27, 17, NYCTL 2061-A Trust filed its proof of claim [Claim No. 3] against the Debtor asserting a claim in the amount of $146,131.19, secured by a lien against the Real Property.

**F.     The Judgment of Divorce**

64.     On or about December 31, 2005, Mr. Hartman commenced an action for divorce against Ms. Kornish.

65.     On or about July 24, 2008, the New York State Court entered a Judgment of Divorce (the "Judgment of Divorce," a copy of which is attached hereto as Exhibit B).

11

66.     The Judgment of Divorce directed "[the Real Property] shall be placed on the market for sale by April 1st of [Ms. Kornish's and Mr. Hartman's youngest daughter's ("Daughter")] senior year in high school."  Judgment of Divorce, 7.

67.     Upon information and belief, the Daughter graduated high school in or around 2012 and no longer resides at the Real Property.

68.     Mr. Hartman no longer resides at the Real Property, and only Ms. Kornish does.

69.     Upon information and belief, despite the Judgment of Divorce requirement, the Real Property was never put on the market for sale.

**G.     Ms. Kornish's Continued Possession and Control of the Real Property**

70.     On March 16, 2017, the Trustee filed his *Application for an Order (I) Designating Doris Kornish as the Responsible Officer of the Debtor and (II) Compelling Her to (A) Turn Over Property of the Estate to the Trustee;  and (B) Otherwise Cooperate with the Trustee* [Dkt. No. 45] (the "Designation Motion").

71.     The Court considered the Designation Motion during a hearing conducted on April 5, 2017 (the "Designation Motion Hearing").

72.     Ms. Kornish attended the Designation Motion Hearing.

73.     On April 19, 2017, the Court entered the *Order (I) Designating Doris Kornish as the Responsible Officer of the Debtor and (II) Compelling Her to Turn Over Property of the Estate to the Trustee and Otherwise Cooperate with the Trustee* [Dkt. No. 60] (the "Designation Order," a copy of which is attached hereto as Exhibit C).

74.     The Designation Order designates Ms. Kornish as the person responsible to perform the duties of the Debtor in this case, and directs Ms. Kornish to turn over property of the estate to, and otherwise cooperate with, the Trustee.  *See* Designation Order, 1-2.

75.     Ms. Kornish was served with the Designation Order.

76.     Ms. Kornish has no written lease or agreement with the Debtor for use or possession of the Real Property.

77.     Ms. Kornish does not pay rent to the Debtor or the Trustee for her use and occupancy of the Real Property.

78.     As of the date hereof, Ms. Kornish continues to occupy and exercise control over the Real Property.

79.     Upon information and belief, the existence of the NYC Building Dept. Violation severely limited the pool of insurers willing to provide insurance coverage on the Real Property.

80.     On or around May 19, 2017, the Trustee had property and liability insurance on the Real Property bound and renewed prior to when it was set to expire on May 20, 2017.

81.     The insurance broker has informed the Trustee that the insurance carrier requires an inspection of the Real Property.

82.     Ms. Kornish has advised the Trustee that she will not provide access to the Real Property to allow the insurer to conduct its inspection.  As a result, the current insurance policy for the Real Property is at risk.

83.     Upon information and belief, as of the date hereof, Ms. Kornish continues to be in possession of books, records and documents concerning the Real Property, the Debtor's DIP Account (defined below), and the Debtor's affairs.

**H.     Ms. Kornish's Personal Agreement With Village Yoga**

84.     On or about September 1, 2014, prior to the Petition Date, Ms. Kornish, in her individual capacity, and without any apparent authority, executed an

13

agreement with Village Yoga relating to a certain portion of the Property referred to as "Apartment 1" (the "<u>Agreement</u>," a copy of which is attached hereto as <u>Exhibit D</u>).

85.    Pursuant to the unauthorized Agreement, Ms. Kornish has charged Village Yoga an annual fee of $66,000, payable in equal monthly installments of $5,500 to be paid directly to Ms. Kornish for Village Yoga's use and occupancy of Apartment 1.

86.    On or about September 1, 2016, Ms. Kornish, without authority and in her individual capacity, executed an extension and renewal (the "<u>Extension</u>") with Village Yoga for a period of a year.

87.    The Debtor is not a party to the Agreement or the Extension between Ms. Kornish and Village Yoga.

88.    Ms. Kornish did not have any authorization, written or otherwise, to enter into the Agreement on behalf of the Debtor.

89.    Upon information and belief, the Debtor did not maintain a bank account prior to the Petition, and all payments made by Village Yoga for its use and occupancy of Apartment 1 (the "<u>Use and Occupancy Payments</u>"), which is the only known income that has been generated by the Real Property, were paid to Ms. Kornish.

90.    After the Petition Date, the Debtor opened a debtor in possession account at TD Bank (the "<u>DIP Account</u>").

91.    Upon information and belief, Ms. Kornish is the sole person with signatory authority for the DIP Account.

92.    After the Petition Date, the Use and Occupancy Payments were deposited to the DIP Account, but were then immediately withdrawn and transferred by Ms. Kornish.  These transfers were made without any order or authorization by the Court.

93.    Upon information and belief, Ms. Kornish has never used any portion of the Use and Occupancy Payments to pay any of the secured debt or real estate tax obligations of the Real Property, or to pay for any insurance for the Real Property.

94.    Shortly after his appointment, the Trustee made demands upon Ms. Kornish to deliver and turn over to the Trustee all amounts on hand in the DIP Account and to forward all Use and Occupancy Payments to the Trustee.

95.    Mr. Kornish failed to comply with the Trustee's demands for turnover of the DIP Account balances and the Use and Occupancy Payments that she received from Village Yoga.

96.    The Designation Order directed Village Yoga to deliver all Use and Occupancy Payments to the Trustee.

97.    As of the date hereof, Village Yoga continues to possess and exercise control over Apartment 1 of the Real Property.

98.    The amount paid by Village Yoga monthly for Use and Occupancy of Apartment 1 is not sufficient to satisfy the monthly expenses of the Real Property and the interest that accrues on the claims asserted by the parties that have asserted liens against the Real Property.

**I.    The Trustee Must Recover Possession and Control of the Real Property to Sell the Real Property to Satisfy Creditor's Claims, and Avoid Any Further Harm <u>Caused by the Possession and Control of the Defendants</u>**

99.    The Defendants' continued possession and control of the Real Property, and Ms. Kornish's refusal to turn over all books and records concerning the Real Property and the DIP Account, has directly caused a significant loss and harm to this estate.

100.    The existence of the previously undisclosed New York Building Dept. Violation severely limited the pool of insurers willing to provide coverage on the Real Property.

101.    The current policy is at risk because Ms. Kornish has refused the Trustee's request to provide access to the Real Property to allow the insurer of the Real Property to conduct an inspection.

102.    Ms. Kornish is currently residing at the Real Property with no agreement or lease with the Debtor, and is not compensating the Debtor for her use and occupancy of the Real Property.

103.    The expenses and interest on claims secured by the Real Property currently exceed monthly income generated by the Real Property.

104.    The NYC Building Dept. Violation remains outstanding, and there is a penalty balance of $4,030.

105.    The value of the Real Property appears to exceed the claims asserted by LCP Jerry LLC and Knuckleknee LLC.  However, LCP Jerry LLC and Knuckleknee LLC have so far refrained from seeking relief from the automatic stay to enforce the Foreclosure Judgment and the Knuckleknee Mortgage.  Absent a prompt sale, LCP Jerry LLC and Knuckleknee LLC may seek relief from the automatic stay and cause a forced liquidation sale of the Real Property.

106.    The Real Property is the sole-asset of the Debtor's estate that can be sold to pay claims and expenses against the Debtor's estate.

### FIRST CAUSE OF ACTION
**(Injunctive Relief Directing Defendant
Ms. Kornish to Provide Access to the Real Property)**

107.    Plaintiff repeats and re-alleges paragraphs 1 through 103 of this Complaint as though set forth herein.

16

108.    Ms. Kornish is in possession of and exercising control over the Real Property.

109.    On or about May 19, 2017, the Trustee arranged for property and liability insurance on the Real Property to be bound and renewed prior to its expiration date of May 20, 2017.

110.    The insurance broker has advised the Trustee that the insurer has demanded that it be given access to conduct an inspection of the Real Property.

111.    Ms. Kornish has refused to comply with the Trustee's request that she provide immediate access to the Real Property to allow the insurer of the Real Property to conduct its required inspection, which places the current policy at risk.

112.    Pursuant to the Designation Order, Ms. Kornish is the person responsible for performing the duties of the Debtor under Bankruptcy Code section 521, and is required to cooperate with the Trustee.

113.    Bankruptcy Code Section 521(a)(4) provides "[t]he Debtor shall . . . cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title." 11 U.S.C.A. § 521(a)(3).

114.    Pursuant to Bankruptcy Code section 1106(a)(1), a Chapter 11 trustee has a duty to "be accountable for all property received." 11 U.S.C § 1106(a)(1).

115.    Ms. Kornish's refusal to cooperate with the Trustee constitutes a violation of her duty pursuant to the Designation Order and Bankruptcy Code 521, and, therefore, an order should be entered directing Ms. Kornish to provide immediate access to the Trustee, and/or any party authorized by the Trustee, to the Real Property to allow the insurer of the Real Property to conduct its inspection, or for any other purpose needed by the Trustee, in order to avoid further irreparable harm to the Debtor's estate and its creditors.

### SECOND CAUSE OF ACTION
**(Turnover of Property of the Estate Against Defendant Ms. Kornish)**

116.   Plaintiff repeats and re-alleges paragraphs 1 through 112 of this Complaint as though set forth herein.

117.   Ms. Kornish is in possession of and exercising control over the Real Property.

118.   Ms. Kornish's continued use, possession, and occupancy of the Real Property impairs the Trustee's efforts to maximize the value of the Real Property by selling it.

119.   The Real Property constitutes property of the bankruptcy estate pursuant to Bankruptcy Code section 541, which must be turned over to Plaintiff pursuant to Bankruptcy Code section 542.

120.   Pursuant to the Designation Order, Ms. Kornish is the person responsible for performing the duties of the Debtor under Bankruptcy Code section 521, and she is required to turn over property of the estate to the Trustee.

121.   The Real Property is property of the Debtor's estate, which the Trustee may use, lease, or sell pursuant to Bankruptcy Code section 363.

122.   Neither Ms. Kornish nor Mr. Hartman have presented the Trustee with a means to address the secured claims against the Real Property and the administrative expenses of this estate absent a sale of the Real Property.

123.   The Use and Occupancy Payments are insufficient to satisfy monthly expenses and the secured claims against the Real Property.

124.   For the reasons set forth above, pursuant to Bankruptcy Code section 542(a) and the Designation Order, an order should be entered directing Ms. Kornish to immediately vacate and turn over the Real Property to the Trustee so that

the Real Property can be sold to address the secured claims against the Debtor and the administrative expenses of this estate.

**THIRD CAUSE OF ACTION**
**(Finding that Village Yoga's Lease is Unenforceable Against the Debtor)**

125.    Plaintiff repeats and re-allege paragraphs 1 through 121 of this Complaint as though set forth herein.

126.    The Debtor is not a party to the Agreement between Ms. Kornish and Village Yoga.

127.    Ms. Kornish was not authorized to enter into the Agreement with Village Yoga on behalf of the Debtor.

128.    As of the Petition Date, Village Yoga made payments under the Agreement directly to Ms. Kornish and not to the Debtor.

129.    As of the date hereof, Village Yoga continues to occupy Apartment 1 of the Real Property.

130.    Village Yoga has been given, and has acknowledged having, actual notice of this Chapter 11 case.

131.    Pursuant to section 5-703(1) of the New York General Obligations Law, the Agreement is not effective to create a valid interest in the Real Property.

132.    Village Yoga's continued use and occupancy of the Real Property impairs the Trustee's ability to maximize the value of the Real Property and convey title of the Real Property free and clear of all claims, interests, and liens.

133.    An order should be entered finding that the Agreement between Ms. Kornish and Village Yoga is unenforceable against the Debtor.

## FOURTH CAUSE OF ACTION
### (Turnover of Property of the Estate Against Defendant Village Yoga)

134.   Plaintiff repeats and re-alleges paragraphs 1 through 130 of this Complaint as though set forth herein.

135.   Pursuant to section 5-703(1) of the New York General Obligations Law, Village Yoga is in possession of Apartment 1 of the Real Property without a valid lease, interest or tenancy.

136.   The Real Property constitutes property of the Debtor's bankruptcy estate pursuant to Bankruptcy Code section 541 and must be turned over to Plaintiff pursuant to Bankruptcy Code section 542.

137.   Village Yoga's continued use and occupancy of the Real Property impairs the Trustee's ability to maximize the value of the Real Property and convey title of the Real Property free and clear of all claims, interests, and liens.

138.   For the reasons set forth above, pursuant to Bankruptcy Code section 542(a), an order should be entered directing Village Yoga to immediately surrender and turn over possession of Apartment 1 at the Real Property to the Trustee.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully requests that this Court enter a judgment:

(i)     directing Ms. Kornish to provide:  (a) immediate access to the Real Property to allow the insurer of the Real Property to conduct an inspection, and (b) continuing access to Real Property to the Trustee and his representatives;

(ii)    directing Ms. Kornish to immediately vacate and turn over possession of the Real Property to the Trustee, pursuant to Bankruptcy Code section 542 and the Designation Order;

(iii)   finding the Agreement between Village Yoga and Ms. Kornish is unenforceable as against the Debtor and the Trustee;

(iv)    directing Village Yoga to immediately surrender and turn over Apartment 1 of the Real Property to the Trustee pursuant to Bankruptcy Code section 542; and

(v)    granting such other relief as the Court deems just and proper.

DATED:  New York, New York
        May 31, 2017

ALBERT TOGUT, not individually but solely in his capacity as Chapter 11 Trustee, By His Attorneys, TOGUT, SEGAL & SEGAL LLP By:

*/s/ Neil Berger*
NEIL BERGER
A Member of the Firm
One Penn Plaza
New York, New York 10119
(212) 594-5000